**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

LISA G.,[1]

        **Plaintiff,**

    **v.**

**FRANK BISIGNANO,[2]**
**Commissioner of Social Security,**

        **Defendant.**

        **Case No. 3:24-cv-4306**
        **Magistrate Judge Norah McCann King**

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the applications of Plaintiff Lisa G. for Child's Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 402 *et seq.*, and for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying those applications. After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure.[3] For the reasons that follow, the Court affirms the Commissioner's decision.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.

[2] Frank Bisignano, the current Commissioner of Social Security, is substituted as Defendant in his official capacity. *See* Fed. R. Civ. P. 25(d).

[3] Because the Court may resolve this matter on the filings and the parties' arguments, the Court denies Plaintiff's request for oral argument. *Plaintiff's Brief*, ECF No. 5, p. 28.

## I.    PROCEDURAL HISTORY

Plaintiff filed applications for supplemental security income and child insurance benefits on March 16, 2021, and May 21, 2021, respectively, alleging in both applications that she has been disabled since February 10, 2016. R. 66–67, 86–87, 231–41.[4] The applications were denied initially and upon reconsideration. R. 108–16, 120–27. Plaintiff sought a *de novo* hearing before an administrative law judge ("ALJ"). R. 153–55, 157–58. ALJ Peter Lee held a hearing on January 19, 2023, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 34–65. In a decision dated April 4, 2023, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from February 10, 2016, Plaintiff's alleged disability onset date, through the date of that decision. R. 14–26. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on February 5, 2024. R. 1–6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On February 10, 2025, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the

---

[4] Child's insurance benefits are payable to a child "of an individual entitled to old-age or disability insurance benefits, or of an individual who dies a fully or currently insured individual" under certain circumstances. 42 U.S.C. § 402(d)(1)(B). The applicable regulation further explains that an applicant is entitled to such child's benefits if:

> (1) You are the insured person's child, based upon a relationship described in §§ 404.355 through 404.359;
> (2) You are dependent on the insured, as defined in §§ 404.360 through 404.365;
> (3) You apply;
> (4) You are unmarried; and
> (5) You are under age 18; you are 18 years old or older and have a disability that began before you became 22 years old; or you are 18 years or older and qualify for benefits as a full-time student as described in § 404.367.

20 C.F.R. § 404.350(a). In the present case, Plaintiff, although now an adult, R. 26, 66–67, sought, *inter alia*, child's insurance benefits on the earnings record of her deceased father, Michael G. R. 240–41.

Federal Rules of Civil Procedure. ECF No. 11.[5] On the same date, the case was reassigned to the undersigned. ECF No. 12. The matter is ripe for disposition.

## II.    LEGAL STANDARD

### A.    Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different

---

[5]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g., Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210,

221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record.  *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016).

### B.    Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or

combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id*. at §§ 404.1509, 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III.     ALJ DECISION AND APPELLATE ISSUES

Plaintiff was 16 years old on February 10, 2016, her alleged disability onset date. R. 26. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between that date and the date of the decision. R. 17.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: fibromyalgia; psychosis (substance induced); depressive disorder; anxiety; obsessive compulsive disorder ("OCD"); personality disorder; post-traumatic stress disorder ("PTSD"); and substance abuse. *Id*. The ALJ also found that Plaintiff's irritable bowel syndrome ("IBS") and migraine headaches were not severe impairments. *Id*.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 17–19.

At step four, the ALJ found that Plaintiff had the RFC to perform medium work subject to various additional limitations. R. 19–26. The ALJ also found Plaintiff had no past relevant work. R. 26.

At step five and relying on the testimony of the vocational expert, the ALJ found that a significant number of jobs—*e.g.*, jobs as a laundry laborer, a laborer (stores), and a laborer (general)—existed in the national economy and could be performed by Plaintiff with this RFC. R. 26–27. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from February 10, 2016, her alleged disability onset date, through the date of the decision. R. 27.

Plaintiff disagrees with the ALJ's findings at steps three, four, and five, and alleges that the ALJ demonstrated either bias or a fundamental disregard for the law and regulations. Plaintiff apparently asks that the decision of the Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Brief,* ECF No. 5; *Plaintiff's Reply Brief*, ECF No. 10. The Commissioner takes the position that his decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief*, ECF No. 9.

## IV.    SUMMARY OF RELEVANT MEDICAL EVIDENCE

### A.    Gregory Coleman, Psy.D.

On December 16, 2019, Gregory Coleman, Psy.D., conducted a consultative mental status evaluation. R. 454–59. In documenting Plaintiff's history, Dr. Coleman noted that Plaintiff was a 19-year-old driven to the appointment by her mother. R. 454. Plaintiff had received a high school diploma in regular education. *Id*. She had last worked in 2016 as a cashier for three to

8

four months, but had left that job because of mental health issues. *Id*. Her history included anxiety (including social anxiety), depression, and PTSD. R. 454–55. She had participated in a partial hospitalization program in 2016, a psychiatric hospitalization in 2017, and a partial program in 2019. R. 455. Plaintiff reported last using marijuana two to three months prior to the examination, and to using once per week for one year prior, but no current drug use. R. 456. As to her current functioning, Plaintiff reported the following to Dr.Coleman:

> The claimant has difficulty falling asleep; trazodone is helpful somewhat, but its side effects are giving night terrors reported. The claimant reports a loss of appetite lately. Depressive symptoms dysphoric mood, loss of interests, and irritability. The claimant reports being depressed because of her living situation, between places, and living with the extended family, concentration difficulties, diminished self-esteem, started in 2011, daily problems, moderate in severity, therapy is helpful, and medication is helpful lately. The claimant denies any suicidal or homicidal ideation today. Anxiety symptoms: Excessive apprehension and worry about everything, irritability, difficulties concentrating, and restlessness, started in 2009, constant stress was reported, moderate to severe, medication helpful, therapy not helpful. Panic attacks: Palpitations, throwing up, sweating, difficulties breathing, it varies related to her PTSD, and flashbacks, it lasts 20 to 30 minutes. PTSD reports flashbacks of father's death and ex-boyfriend's sexual trauma related to him. Diagnosed with PTSD in 2011, mild to moderate with the stressors of the day. The claimant denies any command hallucinations today to hurt self or others.

R. 455–56. Upon mental status examination, Dr. Coleman noted as follows:

> MENTAL STATUS EXAMINATION: The claimant was cooperative today. She had very adequate social skills.

> APPEARANCE: She appeared same as age. Appropriately dressed. Well groomed. Distinctive features: Lip was pierced, wearing makeup on her eyes, groomed eyebrows, short manicured nails, and facial acne was noted. Tends to be high anxiety. Mother tended to speak for her. Posture normal. Motor behavior restless. Eye contact appropriate.

> SPEECH: Speech was fluent. Quality of voice was clear. Expressive and receptive language was adequate.

> THOUGHT PROCESSES: Coherent and goal directed with no evidence of hallucinations, delusions, or paranoia in evaluation setting.

AFFECT: Affect was anxious today. MOOD: Mood was reported as anxious.

SENSORIUM: Sensorium was clear.

ORIENTATION: The claimant was oriented to person, place, and time.

ATTENTION AND CONCENTRATION: Attention and concentration was impaired due to anxiety or nervousness during the evaluation. The claimant declined serial 7s and stated that she was too anxious to do so. Serial 3s were substituted as result. The claimant was able to complete serial 3s without error, 17, 14, 11, 8, and 5.

RECENT AND REMOTE MEMORY SKILLS: Recent and remote memory skills were impaired due to anxiety or nervousness during the evaluation. The claimant was able to recall 3 of 3 objects immediately and after a five-minute delay. The claimant was able to recite 5 digits forward and 3 digits backwards.

COGNITIVE FUNCTIONING: Intellectual functioning was in the average range. Fund of information appropriate to experience.

INSIGHT: Insight was fair.

JUDGMENT: Judgment was fair.

R. 456–57. Dr. Coleman addressed Plaintiff's activities of daily living:

MODE OF LIVING: The claimant is able to dress, bathe, and groom herself seven times a week, cook and prepare simple meals seven times a week, and clean two or three times a week. The claimant reports she does laundry as needed and is able to do so and has difficulty with the heavier bedding. The claimant shops one time a week. The claimant is unable to manage money, drive, or take public transportation independently. The claimant socializes with her mother daily, and friends regularly. The claimant has no children or significant other. Father is deceased. She has contact with her two half-sisters occasional contact through social media or contact with her half-brother. Relationship is good with her mother, extended family, and good with her half-siblings. Hobbies and interests: Social media, art, TV, music, games on her computer, and her dogs. The claimant spends the day doing care and interacts with dogs, chores around the house, and her hobbies.

R. 458. Dr. Coleman diagnosed major depressive disorder, moderate; generalized anxiety disorder; panic attacks; PTSD; substance use disorder; unspecified personality disorder. *Id.* (noting that Plaintiff had reported diagnoses of fibromyalgia and high blood pressure). Dr. Coleman recommended and opined as follows:

10

RECOMMENDATIONS:    Recommendations are individual psychological therapy. Psychiatric intervention. Vocational training and rehabilitation.

PROGNOSIS:  Prognosis is fair, given compliance with mental health treatment and finding suitable full-time employment after completion of vocational training.

ABILITY TO MANAGE FUNDS:  The claimant will not be able to manage funds due to limited skills reported by the claimant.

*Id*.

On the same day, Dr. Coleman completed a check-the-box and fill-in-the-blank medical source statement regarding Plaintiff's mental ability to perform work-related activities (mental). R. 460–62. Dr. Coleman opined that Plaintiff had no limitations in her abilities to understand, remember, and carry out simple instructions, make judgments on simple work-related decisions, and understand and remember complex instructions; but she was moderately limited[6] in her abilities to carry out complex instructions and to make judgments on complex work-related decisions. R. 460. Plaintiff was moderately limited in her abilities to interact appropriately with the public, supervisors, and co-workers, as was her ability to respond appropriately to usual work situations and to changes in a routine work setting. R. 461. Plaintiff had no limitations in her abilities to concentrate, persist, or maintain pace and to adapt or manage herself. R. 461. Asked whether he had sufficient information to form an opinion within a reasonable degree of medical or psychological probability as to past limitations and the date that the limitations were first present, Dr. Coleman responded: "[illegible] Skill Anxiety [illegible.]" *Id*. Dr. Coleman referred to Plaintiff's "[r]ecent use of marijuana" when asked about the effect of substances on her limitations. *Id*.

---

[6] To have a moderate limitation means that "[f]unctioning in this area independently, appropriately, effectively, and on a sustained basis is fair." R. 460.

### B.    Eboni Gadson, L.S.W.

Eboni Gadson, L.S.W., authored a letter in support of Plaintiff's disability benefits claim.

R. 806–07. Ms. Gadson diagnosed Plaintiff with PTSD, chronic type; social phobias; and

schizoaffective disorder, depressive type. R. 806. Ms. Gadson detailed her treatment history with

Plaintiff as well as her opined limitations arising from Plaintiff's diagnoses and symptoms:

> Lisa contacted me in 2018 seeking psychotherapy to address intense trauma symptoms. She was experiencing dissociation and panic attacks that greatly impacted her affect and ability to perform activities of daily living. Lisa and I continue to meet weekly to address trauma symptoms. What follows is the treatment process and progress:
>
> Initially the treatment goal was safety and stabilization, following the triphasic model of trauma treatment. This was done through the development of coping skills, grounding techniques, safety plans, and learning warning signs for hyperarousal. We are still solidifying skills learned in this phase and diversifying Lisa's self-regulation tools. A significant and complex trauma history makes it important that safety is navigated before vigorous processing is done, as evidenced by her  physical health.
>
> As is common with trauma survivors, Lisa requires support for activities of daily living like showering, doing laundry, and going to the grocery store. Her reported fibromyalgia symptoms of fatigue, headaches, muscle and joint pain make it difficult to carry out tasks like these from a physical standpoint. Currently auditory and visual hallucinations are a very distressing symptom that prevent Lisa from leaving the house on her own and being more independent. Part of our treatment together has included diversifying her support network so her basic needs can be met.
>
> The connection between fibromyalgia and mental health is discussed throughout health research. In Lisa's case, her memory, concentration, and sleep are affected. These symptoms are exacerbated by her other diagnoses: Post-traumatic Stress Disorder (PTSD) and Social Phobias. She reports that she often switches from task to task sacrificing quality of performance.
>
> While Lisa would like to be more autonomous, the symptoms of her social phobia present barriers to performing work-related activities. Her worry about doing things correctly and disappointing others tends to perpetuate a slower processing time. This aspect of her social phobia can result in a panic attack when a deadline is approaching. Lisa reports that she struggles accessing a support network which affects social and professional relationships. In addition, she doesn't have a reliable method of transportation to work since her physical and mental health diagnoses

12

prevent her from driving.

> I am a licensed social worker in New Jersey specializing in trauma. I treat people from diverse backgrounds in a private practice, outpatient setting. I facilitate trainings and workshops on various topics including trauma informed care for clinicians and other healthcare providers. I would welcome a phone call to verify that I wrote this document on behalf of my client and to address any additional questions.

R. 806–07.

### C.    Nadine Gardner, Psy.D.

Nadine Gardner, Psy.D., conducted a consultative psychological evaluation on May 27, 2021. R. 801–04. Dr. Gardner noted that Plaintiff's mother had driven her to the evaluation, but that Plaintiff had entered the room alone. R. 801 (noting that Plaintiff lived with her mother, mother's ex-husband, and three adult roommates). Plaintiff had a high school diploma from a home school program where she had been placed due to anxiety. *Id*. Plaintiff was not currently working and had last worked in 2017 as a cashier for a few months before quitting to enter a partial hospitalization program. *Id*. (noting that Plaintiff had spent ten days in a hospital followed by a one-month partial hospitalization program). Plaintiff had attended weekly psychotherapy and monthly psychiatric treatment for the prior year but had had no mental health treatment before that. *Id*. As to "Drug and Alcohol History[,]" Dr. Gardner noted, "Negative past and present[.]" *Id*. Dr. Gardner recorded Plaintiff's reports as to her current functioning:

> The claimant states she has difficulty falling asleep and will wake 3-5x per night, often due to nightmares. Her appetite and weight fluctuate, and she has lost 5 lbs. in the last 6 months. Depressive symptomatology includes dysphoric mood, crying spells, loss of energy, interest and pleasure and social withdrawal. The claimant endorses passive suicidal ideation but denies any active plan and is in treatment and not considered to be at risk. She endorses excess anxiety; panic attacks occur daily with palpitations, sweating, nausea, trembling and breathing difficulties; the claimant does not know what triggers these attacks. She denies mania. The claimant reports being raped in the last few years and notes flashbacks that are often triggered by certain smells. Auditory hallucinations included severed heads coming through her window and commands to hurt herself which she ignores. The claimant

notes that these were problems before her rape. Cognitive deficits are in short- and long-term memory and concentration.

R. 802. Upon mental status examination, Dr. Gardner noted as follows:

> The claimant was cooperative and adequately related. She appeared younger than her stated age and was appropriately dressed and well groomed. Distinctive features included tattoos on both inner elbows and there were no distinctive physical features. Posture was slouched, motor behavior was lethargic and eye contact was variable. Speech was fluent, quality of voice was clear and both receptive and expressive language were appropriately developed. The claimant's thought process was coherent, and goal directed. Affect was dysphoric, mood was anxious and dysthymic, and she cried during the evaluation. Sensorium was clear and she was oriented to person, place and time. In terms of attention and concentration the claimant can count from 1 to 20 appropriately and notes that $8 + 4 = 12$, $12 - 6 = 6$, $5 \times 5 = 25$ and $20/4$ she could not do. She could not perform Serial 7s from 100S; Serial 3s from 20 were performed as 20,17,14,11,8,5,2. The claimant could remember the words dog, pencil, and book immediately and again after 5 minutes. She was able to repeat the number streams 6439, 42731, and 619473; 5917428 = 5947128. Digits backward: 629 became 926, 3279 became 927 and 15286 she could not do.

R. 802–03. Dr. Gardner opined that Plaintiff's cognition appeared to be low average-average; her general fund of information was appropriate; fair insight; and poor-fair judgment. R. 803. As to Plaintiff's daily functioning,

> [t]he claimant can bathe, groom, and dress herself. Her mother does the cooking and she does some cleaning and laundry. She shops with her mother and manages her own money. She does not drive or take public transportation. She talks with friends on the phone. Her relationship with family is "ok". She enjoys drawing and tattooing and spend her days running a small business on ETSY and walking the dog. She states that she rarely leaves the house due to fear.

R. 803. Dr. Gardner went on to opine as follows:

> **MEDICAL SOURCE STATEMENT:**
> There is no impairment in the claimant's ability to understand, remember and carry out simple directions and a mild impairment carrying out complex directions. *There are moderate-marked impairments sustaining attention and concentration, working at a reasonable pace, maintaining appropriate social interaction with the public, coworkers and supervisors and reacting appropriately to normal work pressure.*
>
> **DIAGNOSIS:**  Major Depressive Disorder with Psychotic features

14

> PTSD
> Panic Attacks
> R/O Borderline Personality Disorder
> R/O Schizoaffective Disorder
> Agoraphobic

**RECCOMMENDATIONS [sic]:** Individual psychotherapy with a DBT focus, psychiatric services, support group.

**PROGNOSIS:** Poor-Fair given appropriate treatment

R. 803–04 (emphasis added).

### D.    Naomi Stark, M.A., L.P.C., and Marina Weidner

On April 7, 2022, Naomi Stark, M.A., L.P.C., completed a four-page, check-the-box "Mental Medical Source Statement Form." R. 1264–67. For each of the following mental activities, Ms. Stark opined that each limitation "[p]recludes performance for 15% to more of an 8 hour workday ["Category IV]:]" remember locations and work-like procedures; understand, remember, and carry out very short and simple instructions; understand, remember, and carry out detailed instructions; maintain attention and concentration for two-hour period; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; sustain an ordinary routine without special supervision; work in coordination with or in proximity to others without being distracted by them; make simple work-related decisions; complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; ask simple questions or request assistance; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; respond appropriately to changes in the work setting; be aware of normal hazards and take appropriate precautions; travel in unfamiliar places or use public transportation; and set realistic goals or

make plans independently of others. *Id*. Ms. Stark was unable to assess Plaintiff's ability to maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness. R. 1266.

On November 22, 2022, Marina Weidner, Plaintiff's therapist, completed the same check-box mental medical source statement form as did Ms. Stark, agreeing with Ms. Stark's assessment. R. 1930–33. Ms. Weidner also addressed the degree to which Plaintiff would be off-task in the following activities: remember locations and work-like procedures; understand and remember very short and simple instructions; understand, remember, and carry out detailed instructions; maintain attention and concentration for two-hour period; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; respond appropriately to changes in the work setting; and travel in unfamiliar places or use public transportation. *Id*. Ms. Weidner opined that Plaintiff's limitations "[p]reclude[] performance for 10% of an eight-hour workday [Category III:]": sustain an ordinary routine without special supervision; work in coordination with or in proximity to others without being distracted by them; make simple work-related decisions; and be aware of normal hazards and take appropriate precautions. R. 1931, 1933. Plaintiff's limitations "[p]reclude[] performance for 5% of an eight-hour workday [Category II]": carry out very short and simple instructions; interact appropriately with the general public; ask simple questions or request assistance; and set realistic goals or make plans independently of others. R. 1931–33. Finally, Plaintiff's limitations did "not preclude

performance for any aspect of the job [Category I]" in her ability to  carry out very short and simple instructions. R. 1931.

## V.    DISCUSSION

### A.    Step Three

Plaintiff challenges the ALJ's finding at step three of the sequential evaluation process that Plaintiff's mental impairments[7] did not meet or medically equal a listed impairment, specifically, Listings 12.03 (schizophrenia spectrum and other psychotic disorders), 12.04 (depressive, bipolar, and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), 12.08 (personality and impulse-control disorders), and 12.15 (trauma- and stressor-related disorders). *Plaintiff's Brief*, ECF No. 5; *Plaintiff's Reply Brief*, ECF No. 10. This challenge is not well taken.

At step three, an ALJ considers whether the combination of the claimant's medically determinable impairments meets or medically equals the severity of any of the impairments in the Listing of Impairments. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). An impairment meets a listed impairment if it satisfies "'*all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify.'" *Jones,* 364 F.3d at 504 (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)) (emphasis in original). "A claimant cannot qualify for benefits under the 'equivalence' step by showing that the *overall* functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Sullivan*, 493 U.S. at 531 (emphasis added). "[T]he medical criteria defining the listed impairments [are set] at a higher level of severity than the statutory standard" because the "listings define impairments that would prevent an adult, regardless of his age,

---

[7] Plaintiff does not claim that her fibromyalgia meets or medically equals a listed impairment.

education, or work experience, from performing *any* gainful activity, not just 'substantial gainful activity.'" *Id.* at 532 (emphasis in original) (quoting 20 C.F.R. § 416.925(a)). Although an ALJ is not required to use "particular language" when determining whether a claimant meets a listing, the ALJ's discussion must provide for "meaningful review." *Jones*, 364 F.3d at 505 (citing *Burnett*, 220 F.3d at 120). Accordingly, if the ALJ's decision, "read as a whole, illustrates that the ALJ considered the appropriate factors in reaching the conclusion that [the claimant] did not meet the requirements for any listing," "[t]his discussion satisfies *Burnett*'s requirement that there be sufficient explanation to provide meaningful review of the step three determination." *Id.*

Listing 12.03 addresses schizophrenia spectrum and other psychotic disorders; Listing 12.04 addresses depressive, bipolar, and related disorders; Listing 12.06 addresses anxiety and obsessive-compulsive disorders; Listing 12.08 addresses personality and impulse-control disorders; and Listing 12.15 addresses trauma- and stressor-related disorders. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.03, 12.04, 12.06, 12.08, 12.15. In order to meet any of these Listings, a claimant must satisfy these Listings' A criteria and either the paragraph B or C[8] criteria of these Listings. *Id.* The paragraph B criteria are met when a claimant has an extreme limitation of one, or a marked limitation of two,[9] of the following four mental functional areas: the ability to understand, remember, or apply information; the ability to interact with others; the ability to concentrate, persist, or maintain pace; and the ability to adapt or manage oneself. *Id.*

Here, at step two, the ALJ determined that Plaintiff suffered the severe impairments of fibromyalgia; psychosis (substance induced); depressive disorder; anxiety; obsessive compulsive

---

[8] Plaintiff does not raise a paragraph C challenge.
[9] A "marked" limitation means that the claimant is seriously limited her ability to function independently, appropriately, effectively and on a sustained basis in a specified area. *Id.* at § 12.00F2d. An "extreme" limitation means that the claimant is unable to function independently, appropriately, effectively on a sustained basis in a specified area. *Id.* at § 12.00F2e.

18

disorder ("OCD"); personality disorder; PTSD; and substance abuse. R. 17. The ALJ determined

at step three that Plaintiff's mental[10] impairments, whether considered singly or in combination,

neither met nor medically equalled Listings 12.03, 12.04, 12.06, 12.08, or 12.15, finding, *inter*

*alia*, that Plaintiff had only moderate limitations in the four broad areas of functioning:

> In understanding, remembering or applying information, the claimant has a moderate limitation. During the independent mental status evaluation with Dr. Coleman in December 2019, the claimant's recent and remote memory skills were noted to be impaired due to her anxiety but her cognitive functioning was noted to be average (Exhibit 4F). During her independent mental status examination with Dr. Gardner in May 2021, the claimant was noted to be unable to perform serial sevens but she was able to perform serial threes. She was noted to be able to remember the words dog, pencil, and book immediately and again after five minutes. She was also able to repeat number streams. The claimant reported to Dr. Gardner that she manages her own money and she reported being able to run a small business on Etsy. Based on evaluation, Dr. Gardner opined that the claimant had no impairment with her ability to understand, remember and carry out simple directions and had only mild impairments with carrying out complex directions (Exhibit 13F). I note that during the hearing, the claimant was able to answer questions that were posed to her and based on evidence in its entirety, I find a moderate limitation exists in this area.
>
> In interacting with others, the claimant has a moderate limitation. The claimant reported during the independent mental status evaluation with Dr. Gardner that she was able to shop with her mother and she reported talking with friends on the phone. She reported that her relationship with her family was okay but she reported she rarely leaves her house due to fear (Exhibit 13F). At the hearing, the claimant testified that she has difficulty having face-to-face conversations with people and she reported feeling very vulnerable around men. She testified at the hearing that she  cannot work at a job that is very people based and which requires talking to various people daily. As such, I find a moderate limitation exists in this area.
>
> With regard to concentrating, persisting or maintaining pace, the claimant has a moderate limitation. During her independent mental status evaluation with Dr. Coleman in December 2019, the claimant's attention and concentration were noted to be impaired due to her anxiety. She declined to do serial sevens and so serial threes were substituted as a result. The claimant was able to complete serial threes without any errors (Exhibit 4F). During the independent mental status evaluation with Dr. Gardner in May 2021, the claimant was able to count from one to 20 appropriately and she was able to do addition, subtraction, and multiplication. She

---

[10] Again, Plaintiff does not challenge the ALJ's consideration of her physical impairments at step three.

was not able to do division. The claimant also reported to Dr. Gardner that she was able to manage her own money and did run a small business on Etsy (Exhibit 13F). Even her progress notes from Rutgers University Behavioral Healthcare in late September 2022 documented that she was oriented and noted that her attention and concentration were good. The claimant was noted to be able to focus throughout her session without any distractions and her memory was noted to be fair (Exhibit 29F/9). As such, I find a moderate limitation exists in this area.

As for adapting or managing oneself, the claimant has experienced a moderate limitation. The claimant reported during the independent mental status examination with Dr. Gardner that she was able to bathe, groom, and dress herself. She reported that her mother does the cooking but she reported that she is able to do some cleaning and laundry. She also reported that she shops with her mother is able to manage her own money. She reported that she enjoys spending her days drawing and tattooing, running a small business on Etsy, and walking her dog. She did report to Dr. Gardner that she rarely leaves her house though due to fear (Exhibit 13F). I find a moderate limitation exists in this area.

Because the claimant's mental impairments do not cause at least two "marked" limitations or one "extreme" limitation, the "paragraph B" criteria are not satisfied.

R. 18–19. The Court finds no error in the ALJ's reasoning in this regard and finds that substantial evidence supports the ALJ's determination at step three as to these listings. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.03, 12.04, 12.06, 12.08, 12.15; *see also T.N.D. v. Comm'r of Soc. Sec. Admin.*, No. CV 21-13898, 2022 WL 2235883, at *4–5 (D.N.J. June 22, 2022) (finding that substantial evidence supported the ALJ's finding that the claimant had moderate limitations in the four broad areas of functioning under paragraph B where, *inter alia*, "the ALJ acknowledged Plaintiff sometimes had memory problems and 'borderline judgment,' but also that his memory was normal at times," and the finding was "based on the record as a whole, including" records that showed "Plaintiff exhibited normal concentration"); *cf. Ascher v. O'Malley*, No. 22-CV-1524-SCD, 2024 WL 687801, at *6 (E.D. Wis. Feb. 20, 2024) (supporting the ALJ's rejection of a provider's opined limitation to one-to-two-step tasks where "most of the activities the ALJ mentioned—buying and selling items online, preparing simple meals, doing part-time carpentry work, driving, performing household chores, and shopping—clearly involve

20

at least three steps."); *Burkhart v. Colvin*, No. 3:16-CV-1755, 2018 WL 6735157, at \*8 (M.D. Pa. Aug. 29, 2018), *report and recommendation adopted sub nom. Burkhart v. Berryhill*, No. 3:16-CV-01755, 2018 WL 6499689 (M.D. Pa. Dec. 11, 2018) (rejecting challenge to moderate limitation in social functioning where the claimant reported that "he is annoyed easily[,]" "self-isolates[,]" has "limited" interaction with family members" but "has maintained relationships and friendships" and "spends time talking to others on the telephone. He travels outside the home alone. He attends appointments and shops in stores regularly. The treating providers did not report difficulty with cooperation or social functional deficits during examinations").

Plaintiff challenges the ALJ's paragraph B findings, arguing that Dr. Gardner's opinion that Plaintiff had "moderate to marked impairments" with sustaining attention and concentration, working at a reasonable pace, and maintaining appropriate social interaction constitutes "a prima facie showing of meeting the B criteria[.]" *Plaintiff's Brief*, ECF No. 5, p. 9. Plaintiff complains that the ALJ failed to expressly cite Dr. Garner's opinion, instead citing only "Dr. Coleman's and Dr. Gardner's evaluations, and draws conclusions based on that alone." *Id*. However, as detailed above, the ALJ expressly cited to Dr. Gardner's opinion at step three of the sequential evaluation process. R. 18. Although the ALJ did not specifically discuss this portion of Dr. Gardner's opinion, that omission is not fatal: Dr. Gardner opined that Plaintiff has "*moderate*-marked" limitations, R. 803, not only marked limitations as Listings 12.03, 12.05, 12.06, 12.08, and 12.15 require. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.03, 12.04, 12.06, 12.08, 12.15. The ALJ clearly implicitly adopted Dr. Gardner's opinion of *moderate* limitations and articulated the findings that supported that finding. R. 18–19. Plaintiff has not persuaded this Court that remand on this basis is warranted.

Plaintiff further contends that the ALJ erred in relying on "his own lay observations of" Plaintniff's activities and that the ALJ "substitutes qualified opinion for his own." *Id*. at 9–10 (citing R. 17[11]). Plaintiff complains that the "very modest list of" Plaintiff's social activities warrants a greater than moderate restriction—without specifying whether a marked or extreme limitation is warranted or explaining why this evidence requires a greater restriction. *Id*. at 10. But, as the Court has already explained, the ALJ implicitly adopted Dr. Gardner's opinion of moderate limitations. Moreover, in advancing her argument, Plaintiff simply points to the same evidence considered by the ALJ and insists that the ALJ erred in this finding. *See id*. Plaintiff's argument in this regard boils down to nothing more than a disagreement with the ALJ's decision, which the Court has already explained is supported by substantial evidence. *See Perkins v. Barnhart*, 79 F. App'x 512, 514–15 (3d Cir. 2003) ("Perkins's argument here amounts to no more than a disagreement with the ALJ's decision, which is soundly supported by substantial evidence."). This Court therefore declines Plaintiff's invitation to re-weigh the evidence or to impose its own factual determinations on this record. *See Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011); *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014)  (stating that a reviewing court "must not substitute [its] own judgment for that of the fact finder"); *cf. Stacey C. v. Comm'r of Soc. Sec.*, No. CV 24-8187, 2025 WL 2171055, at *15 (D.N.J. July 31, 2025) (rejecting the claimant's challenge to the ALJ's finding of a moderate limitation in interacting with others where the claimant "takes issue with the ALJ's consideration of her ability to socialize with friends on the phone, her ability to go shopping with her boyfriend, and the characterizations of mental health professionals that she was 'pleasant and cooperative'" and the Court explained that it "cannot re-weigh the evidence even if the Court, faced with the same

---

[11] Plaintiff's quotation appears on R. 18.

22

evidence, *might* have decided differently" where the claimant "provides no support for her statement that 'it is obvious' this is a marked limitation) (internal citations omitted) (emphasis in the original).

For these reasons, Plaintiff's step three arguments will not serve as a basis to remand this matter.

### B.     RFC and Opinion Evidence

Plaintiff also argues that substantial evidence does not support the ALJ's RFC determination because the ALJ failed to properly consider the opinions of Dr. Coleman, Dr. Gardner, Ms. Gadson, Ms. Stark, and Ms. Weidner. *Plaintiff's Brief*, ECF No. 5, pp. 11–19; *Plaintiff's Reply Brief*, ECF No. 10, pp. 3–7. Plaintiff's arguments are not well taken.

A claimant's RFC is the most that the claimant can do despite her limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). At the administrative hearing stage, it is the ALJ who is charged with determining the claimant's RFC. 20 C.F.R. §§ 404.1546(c), 416.946(c); *see also Chandler*, 667 F.3d at 361 ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). When determining a claimant's RFC, the ALJ has a duty to consider all the evidence. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). However, the ALJ need include only "credibly established" limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to choose whether to include "a limitation [that] is supported by medical evidence, but is opposed by other evidence in the record" but "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason" and stating that "the ALJ also has the discretion to

include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible").

In the case presently before the Court, the ALJ determined that Plaintiff had the RFC to perform a limited range of medium work:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except she can occasionally climb ropes, ladders or scaffolds; never be exposed to unprotected heights or hazardous machinery; frequently climb stairs and ramps; occasionally crawl; frequently kneel, stoop and crouch; frequently perform reaching, fingering and handling; frequently balance; she must have proximate access to restroom facilities; she can have occasional contact with supervisors, co-workers and the public; she is able to do only simple and routine tasks; and her work must be performed in an environment free of fast paced production requirements where productivity is measured at the end of the day and with only occasional changes to essential job functions.

R. 19. After detailing years of record evidence, the ALJ explained this RFC determination as follows:

> Based on the foregoing, I find the claimant has the above residual functional capacity assessment, which is supported by the record evidence in its entirety. Although the record documents that the claimant has had hospitalizations and has been involved in partial hospitalization treatment programs, these events do not meet the durational requirements of precluding the claimant from working for 12+ months. I note that in the case of her treatment programs, they were partial day programs during which time the claimant could have been employed. I also note that the record evidence does document that her mental state improved with medication adjustment and therapy. Moreover, I note the evidence documents her history of noncompliance at times as well as her use of marijuana and alcohol which are noted by her treatment records to be precluded. As such, although I find that the claimant's impairments do result in some limitations in functioning, they do not preclude all work activity.

R. 26. In making the RFC determination, the ALJ also specifically considered the opinions of Dr. Coleman, Dr. Gardner, Ms. Gadson, Ms. Stark, and Ms. Weidner, R. 21–25, which Plaintiff now challenges. The Court is not persuaded by that challenge.

24

An ALJ's decision must include "a clear and satisfactory explication of the basis on which it rests" sufficient to enable a reviewing court "to perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704–05. Specifically, the ALJ must discuss the evidence that supports the decision, the evidence that the ALJ rejected, and explain why the ALJ accepted some evidence but rejected other evidence.  *Id*. at 705–06; *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."). Without this explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett,* 220 F.3d at 121 (citing *Cotter*, 642 F.2d at 705).

For claims filed after March 27, 2017,[12] the regulations eliminated the hierarchy of medical source opinions that gave preference to treating sources. *Compare* 20 C.F.R. §§ 404.1527, 416.927 *with* 20 C.F.R. §§ 404.1520c(a), 416.927c(a) (providing, *inter alia*, that the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources"). Instead, the Commissioner will consider the following factors when considering all medical opinions: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treating examination, the frequency of examinations, and the purpose of the treatment relationship; (4) the medical source's specialization; and (5) other factors, including, but not limited to, "evidence showing a medical

---

[12] As previously noted, Plaintiff's applications were filed on March 16, 2021, and May 21, 2021.

25

source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(c), 416.920c(c).

The applicable regulations emphasize that "the most important factors [that the ALJ and Commissioner] consider when [] evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)." *Id.* at §§ 404.1520c(a), 416.920c(a). As to the supportability factor, the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(1), 416.920c(c)(1).  As to the consistency factor, the regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(2), 416.920c(c)(2).

The applicable regulations further require the ALJ to articulate his "consideration of medical opinions and prior administrative medical findings" and articulate in the "determination or decision how persuasive [he] find[s] all of the medical opinions and all of the prior administrative medical findings in [the claimant's] case record." *Id.* at §§ 404.1520c(b), 416.920c(b). As previously noted, "[s]upportability and consistency are the most important factors. . . . ALJs need not explain their determinations regarding the other factors, but they must discuss supportability and consistency." *Gongon v. Kijakazi*, 676 F. Supp. 3d 383, 394 (E.D. Pa. 2023) (citations omitted); *see also Stamm v. Kijakazi*, 577 F. Supp. 3d 358, 370 (M.D. Pa. 2021) ("Generally, the ALJ may, but is not required to, explain his or her consideration of the other

factors, but if there are two equally persuasive medical opinions about the same issue that are not exactly the same, then the ALJ must explain how he or she considered the other factors."). Finally, "a judge need not reiterate the magic words 'support' and 'consistent' for each doctor" in order to satisfy the articulation requirements for the supportability and consistency factors, providing that the judge "weave[s] supportability and consistency throughout her analysis of which doctors were persuasive." *Zaborowski v. Comm'r of Soc. Sec.*, 115 F.4th 637, 639 (3d Cir. 2024).

The Court addresses in turn Plaintiff's challenges to the ALJ's consideration of the opinion evidence.

### 1. Dr. Coleman

In crafting the RFC, the ALJ expressly considered Dr. Coleman's independent medical examination, detailing that provider's findings:

> In December 2019, the claimant underwent an independent mental status evaluation with Dr. Coleman. The claimant was noted to have a history of depression, anxiety, and PTSD and she was noted to have been psychiatrically hospitalized in 2017 and 2019. The claimant was noted to be engaged in a partial hospitalization program in 2019 in which she received therapy and medication. The claimant reported to Dr. Coleman that she was currently looking for treatment but was not in any treatment. On exam, the claimant was cooperative and exhibited very adequate social skills. Her thought processes were coherent and goal directed but her mood and affect were anxious. *Her attention and concentration as well as her recent and remote memory skills were noted to be impaired due to her anxiety*. Her intellectual functioning was noted to be in the average range and her insight and judgment were noted to be fair. The claimant reported being able to dress, bathe, and groom herself and she reported being able to cook and prepare simple meals. The claimant reported being able to clean and do laundry and she reported being able to shop but being unable to manage money or drive. The claimant reported socializing with her mother daily and her friends regularly. Her diagnoses were major depressive disorder, generalized anxiety disorder, PTSD, and a substance use disorder (Exhibit 4F).

R. 21–22 (emphasis added). The ALJ also expressly considered Dr. Coleman's opinion, which he found persuasive:

I have also considered the opinions of the independent mental status examiners.[13] Dr. Coleman diagnosed the claimant [with] major depressive disorder, generalized anxiety disorder, PTSD, and a substance use disorder. He found that the claimant had no limitations with understanding and remembering simple instructions or complex instructions. However, Dr. Coleman did find that the claimant had moderate difficulties with carrying out complex instructions, making judgments on complex work related decisions, and with interacting appropriately with the public and supervisors and coworkers (Exhibit 4F). I find this opinion to be persuasive as it is supported by the evidence and generally consistent with the treatment notes. Moreover, I note that Dr. Coleman is an acceptable medical source whereas the other opinions furnished below are by the claimant's social worker and thus non-acceptable medical sources.

R. 24.

In her challenge, Plaintiff argues that the ALJ "mostly limited" his consideration to only a portion of Dr. Coleman's opinion ("the check box forms and mental status examination") while limitations contained "in the body of the report were entirely unconsidered." *Plaintiff's Brief*, ECF No. 5, p. 14. Plaintiff specifically contends that Dr. Coleman opined that "'the claimant is unable to manage money, drive, or take public transportation independently' and that vocational training would be necessary before attempting full-time employment." *Id*. Plaintiff complains that these limitations are "severe and job preclusive", yet the ALJ "neither mentioned nor incorporated [them] into the RFC. (Compare ALJ Dec., Finding 5, Tr. 24 with Ex. 4F, Tr. 452 [sic][14])[.]" *Id*. Plaintiff's challenge is not well taken.

As a preliminary matter, the quoted language appears in Dr. Coleman's mental status evaluation under the heading "MODE OF LIVING" and simply reflects Plaintiff's report to Dr. Coleman. R. 458. Notably, the mere memorialization of a claimant's subjective complaints in a medical record does not transform those complaints into objective findings or a medical opinion.

---

[13] The Court next addresses the ALJ's consideration of Dr. Gardner's opinion.

[14] Plaintiff mistakenly cites to R. 452, which does not contain the quoted language and is instead a "BDD IMA SERVICE REQUEST[.]" The quotation actually appears at R. 458.

28

*Hatton v. Comm'r of Soc. Sec. Admin.*, 131 F. App'x 877, 879 (3d Cir. 2005) ("[A] medical source does not transform the claimant's subjective complaints into objective findings simply by recording them in his narrative report[.]") (summarizing *Craig v. Chater*, 76 F.3d 585, 590 n. 2 (4th Cir. 1996)); *Morris v. Barnhart*, 78 F. App'x 820, 824–25 (3d Cir. 2003) ("[T]he mere memorialization of a claimant's subjective statements in a medical report does not elevate those statements to a medical opinion.") (citations omitted).

As to Plaintiff's complaint that the ALJ failed to incorporate into the RFC Dr. Coleman's "opinion" that "vocational training would be necessary before attempting full-time employment[,]" *Plaintiff's Brief*, ECF No. 5, p. 14, that physician simply *recommended* vocational training; he did not opine that such training was "necessary". *See* R. 458 ("RECOMMENDATIONS:  Recommendations are individual psychological therapy. Psychiatric intervention. Vocational training and rehabilitation."). Dr. Coleman's own report therefore does not support Plaintiff's assertion that vocational training is a "severe and job preclusive" limitation. *Id*.; *Plaintiff's Brief*, ECF No. 5, p. 14.

Plaintiff next complains that, although the ALJ gave "weight" to Dr. Coleman's opinion, he failed to consider or discuss his opinions that Plaintiff's "'[a]ttention and concentration were impaired due to anxiety or nervousness during the evaluation" and "'recent and remote memory skills were impaired due to anxiety or nervousness during the evaluation.' (Ex. 4F, Tr. 457)[.]" *Plaintiff's Brief*, ECF No. 5, p. 19. Plaintiff complains that these opinions "were not incorporated into the RFC." *Id*. Plaintiff therefore takes the position that substantial evidence does not support the RFC. *Id*.

This Court disagrees. First, as detailed above, the ALJ expressly considered Dr. Coleman's observations that Plaintiff's attention, concentration, and recent/remote memory were

impaired due to her anxiety. R.22. "The ALJ was not required to repeat this information for the sake of elaborating on [his] findings of persuasiveness [of Dr. Coleman's opinions]." *Serrano v. Kijakazi*, No. CV 20-3985, 2021 WL 4477137, at *3–4 (E.D. Pa. Sept. 30, 2021). Moreover, while Plaintiff characterizes this evidence as Dr. Coleman's "opinions," it is not immediately apparent that this is a proper characterization. Dr. Coleman's findings were observed upon his mental status examination during the administration of psychological tests and are apparently objective medical evidence (psychological signs), rather than an opinion. *See* 20 C.F.R. §§ 404.1502(f) ("Objective medical evidence means signs, laboratory findings, or both."), 416.902(k) (same), 404.1502(g) ("Signs means one or more anatomical, physiological, or psychological abnormalities that can be observed, apart from your statements (symptoms). Signs must be shown by medically acceptable clinical diagnostic techniques. Psychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development, or perception, and must also be shown by observable facts that can be medically described and evaluated."), 416.902(l) (same), 404.1513(a)(1) ("Objective medical evidence is medical signs, laboratory findings, or both, as defined in § 404.1502(f)."), (2) ("A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in" certain abilities), 416.913(a)(1) (same), (2) (same).

However, regardless of the proper characterization of Dr. Coleman's findings regarding Plaintiff's impaired attention, concentration, and memory limitations, the ALJ expressly considered this evidence and the RFC reflects this consideration. R. 19, 22. The ALJ specifically limited Plaintiff to, *inter alia*, simple and routine tasks; work performed in an environment free

of fast paced production requirements where productivity is measured at the end of the day with only occasional changes to essential job functions. R. 19. Notably, Plaintiff does not explain how these RFC mental limitations fail to accommodate Dr. Coleman's findings regarding her impaired attention, concentration, and memory, nor does she identify any different or additional limitations that would flow from a proper consideration of Dr. Coleman's findings and opinions. *Plaintiff's Brief*, ECF No. 5, p. 19.

For all these reasons, Plaintiff's challenge to the RFC based on the ALJ's consideration Dr. Coleman's opinions and evidence will not serve as a basis to remand this matter.

### 2.    Dr. Gardner

In crafting the RFC, the ALJ expressly considered Dr. Gardner's psychological evaluation:

> The claimant was noted to be engaged in therapy in 2020 and 2021 and she was noted to be maintained on psychotropic medication for depression and anxiety (Exhibits 7F, 15F, 24F, and 25F). At the request of the agency, the claimant underwent an independent mental status examination with Dr. Gardner in May 2021. The claimant reported a history of fibromyalgia, depression, anxiety, and PTSD. The claimant was noted to have had a 10 day psychiatric hospitalization at St. Luke's followed by one month partial hospitalization program. She was also noted to have attended weekly psychotherapy and monthly psychiatric treatment. The claimant was noted to be maintained on various psychotropic medications but she reported ongoing struggles with nightmares, depression, and social withdrawal. The claimant also reported anxiety with panic attacks and she reported a history of flashbacks. During the evaluation, the claimant was noted to be cooperative and she was noted to relate adequately. Her posture was slouched and her motor behavior was lethargic. Her eye contact was variable but her thought process was coherent and goal directed. Her mood was noted to be anxious but she was noted to be oriented to person, place, and time. In terms of attention and concentration, the claimant was able to count from 1 to 20 appropriately and she was able to perform addition, subtraction, multiplication. The claimant was not able to divide 20/4. The claimant was not able to perform serial sevens but she was able to perform serial threes. She was able to remember the words dog, pencil, and book immediately as well as after five minutes. She was also able to repeat number streams. The claimant reported being able to bathe, groom, and dress herself and she reported being able to do some cleaning and laundry. The claimant reported that her mother did the cooking and she reported that she shops with her mother but is able to manage her

31

own money. The claimant reported talking with friends on the phone and she reported that she enjoys drawing, tattooing, walking her dog, and running a small business on Etsy. The claimant did report that she barely leaves the house due to fear. Based on the evaluation, Dr. Gardner diagnosed the claimant with major depressive disorder, agoraphobia and PTSD and she opined that the claimant had no impairment in her ability to understand, remember and carry out simple directions and had only mild impairments with carrying out complex directions. Dr. Gardner found that the claimant had moderate to marked impairments with sustaining attention and concentration, working at a reasonable pace, and maintaining appropriate social interaction with the public and coworkers and supervisors (Exhibit 13F).

R. 22–23. The ALJ went on to find Dr. Gardner's opinion persuasive, explaining as follows:

Likewise, with regards to the opinion of the independent mental status examiner, Dr. Gardner, I find her opinion persuasive for the same reasons. Dr. Gardner opined that the claimant had no impairment in her ability to understand, remember and carry out simple directions and had only mild impairments with carrying out complex directions. *Dr. Gardner found that the claimant had moderate to marked impairments with sustaining attention and concentration, working at a reasonable pace, and maintaining appropriate social interaction with the public and coworkers and supervisors* (Exhibit 13F). I find that Dr. Gardner's opinion is supported by findings elicited during her one-time evaluation of the claimant and moreover I note that her findings are generally consistent with the claimant's treatment notes. As such, I find that these opinions are consistent with the above established residual functional capacity outlined above.

R. 24–25 (emphasis added).

As she did with Dr. Coleman's opinion, Plaintiff argues that, although the ALJ gave "weight" to Dr. Gardner's opinion, the ALJ improperly failed to consider or discuss the doctor's opined moderate-marked limitations in crafting the RFC. *Plaintiff's Brief*, ECF No. 5, p. 19. Plaintiff's argument is not well taken. As this Court has already explained, the RFC specifically accommodates limitations in attention, concentration, pace, and social interaction by restricting Plaintiff to, among other things, only occasional contact with supervisors, co-workers, and the public; simple and routine tasks; and work performed in an environment free of fast paced production requirements where productivity is measured at the end of the day with only occasional changes to essential job functions. R. 19. Moreover, as with her challenge regarding

Dr. Coleman's opinions, Plaintiff fails to explain how these mental limitations in the RFC do not accommodate Dr. Gardner's opined limitations in social interaction, attention, concentration, and pace. *Plaintiff's Brief*, ECF No. 5, p. 19. Nor does Plaintiff identify any different or additional limitations flowing from the ALJ's consideration of Dr. Gardner's opinions. *Id*. Accordingly, Plaintiff has not persuaded this Court that the ALJ's consideration of these opinions amount to reversible error. *See Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination. . . . [T]he party seeking reversal normally must explain why the erroneous ruling caused harm."); *Rutherford*, 399 F.3d at 553 (finding that "a remand is not required here because it would not affect the outcome of the case").

### 3.    Ms. Gadson

The ALJ also considered the opinion of Ms. Gadson when crafting the RFC:

> Consideration was also afforded to the various opinions offered by the claimant's social worker . . . . In Exhibit 14F, the claimant's social worker, Ms. Gadson, opined that the claimant had fibromyalgia and mental health impairments which negatively impacted her ability to perform daily activities. I do not find the statements by Ms. Gadson to be persuasive as her opinion speaks of limitations in general terms without specifying things such as frequency of the purported limitations. Ms. Gadson did not cite to any specific support for her general conclusions and her conclusions are not consistent with the treatment notes. Moreover, the giver of the opinion in not an acceptable medical source.

R. 25.

Plaintiff contends the ALJ "was explicit that he did not serious consider" Ms. Gadson's opinion "because she is a therapist, and this is evident in the contradictory and limited analysis accorded the treating therapists." *Plaintiff's Brief*, ECF No 5, p. 16. Plaintiff argues the ALJ's consideration is a "misapplication" of the "AMS [acceptable medical source] rule[,]" which resulted in "large swaths of evidence go[ing] unconsidered[.]" *Id*. (noting that Ms. Gadson

"wrote a lengthy explanation of the claimant's history, symptoms, and limitations").; *see also id*. at 12 – 13 (asserting, with no citation to authority, that "[a]n ALJ is not at liberty to discount a medical opinion from a treating source qualified to treat that condition simply because they are not an AMS [acceptable medical source]"). Plaintiff highlights that Ms. Gadson opined that Plaintiff was unable to travel independently, discussed "social phobias that result in panic attacks[,]" Plaintiff's "slowed processing times, how task switches result in poor quality of performance, and how her trauma and physical conditions impact her ability to work." *Id*. at 16 (citing R. 806–07). Plaintiff challenges the ALJ's discounting Ms. Gadson's opinion as inadequate because the ALJ failed to explain what symptoms this provider did not identify, limitations that were not supported, and conflicts in the record. *Id*. (citing R. 25); *Plaintiff's Reply Brief*, ECF No. 10, pp. 6–7 (same).

The Court is not persuaded that this issue requires remand. Relevant to this case, a medical source is "an individual who is licensed as a healthcare worker by a State and working within the scope of practice permitted under State or Federal law[.]" 20 C.F.R. §§ 404.1502(d), 416.902(d). Acceptable medical sources are licensed physicians, licensed psychologists, licensed optometrists, licensed podiatrists (with certain additional restrictions), qualified speech-language pathologists (for speech or language impairments), licensed audiologists (for impairments of hearing loss, auditory processing disorders, and balance disorders within the licensed scope of practice only), licensed advanced practice registered nurses (or other licensed advanced practice nurse with another title, for impairments within his or her licensed scope of practice), and licensed physician assistants (within his or her scope of practice). 20 C.F.R. §§ 404.1502(a), 416.902(a). A medical opinion is a statement from a medical source about what a claimant can do despite her impairment(s) and whether the claimant has one or more impairment-related

limitations or restrictions in certain abilities to perform physical work, mental work, demands of other work (such as seeing, hearing, or using other senses), and ability to adapt to environmental conditions, such as temperature extremes or fumes. 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2). For claims filed on or after March 27, 2017, an ALJ must consider a medical opinion given by a medical source, even if that source is not an acceptable medical source. *See* 20 C.F.R. §§ 404.1520c, 416.920c.

In the present case, even accepting—without definitively finding—that the ALJ discounted in part Ms. Gadson's opinion because she was not an acceptable medical source, the ALJ also gave "other reasons" for discounting that opinion, as Plaintiff concedes. R. 25; *Plaintiff's Reply*, ECF No. 10, p. 7; R. 25. Importantly, before discounting that opinion, the ALJ evaluated Ms. Gadson's opinion according to the applicable regulations when he considered its persuasiveness. R. 25; 20 C.F.R. §§ 404.1520c, 416.920c. The ALJ explained that this opinion was not persuasive because Ms. Gadson spoke of limitations in only "general terms" and the opinion was neither supported by nor consistent with other record evidence. R. 25; *see also* 20 C.F.R. §§ 404.1520c(c)(1), (2), 416.920c(c)(1), (2); *Pierznik v. Comm'r Soc. Sec.*, No. 22-2369, 2023 WL 4014468, at *1 (3d Cir. June 15, 2023) (finding substantial evidence supported the ALJ's RFC determination, including his underlying decision to "not adopt" a physician's opinion because they were "'vague' because they 'failed to address specifically [Appellant's] function-by-function abilities in vocational terms'"), *cert. denied sub nom. Pierznik v. O'Malley*, 144 S. Ct. 1035, 218 L. Ed. 2d 190 (2024). While Plaintiff speculates that "large swaths of evidence go unconsidered" because of Ms. Gadson was not an acceptable medical source, the recitation above reflects that the ALJ specifically cited to Ms. Gadson's opinion letter that detailed Plaintiff's history, symptoms, and limitations. R. 25 (citing 14F, R. 805–07). Even if the ALJ did

35

not expressly discuss all the evidence on which Plaintiff now relies, "[t]here is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record. Even in *Fargnoli*, the court conceded that it did not expect the ALJ to make reference to *every* piece of relevant information." *Hur v. Barnhart,* 94 F. App'x 130, 133 (3d Cir. Apr. 16, 2004) (citing *Fargnoli,* 247 F.3d at 38) (emphasis in the original).

In attacking the ALJ's other reasons for discounting this opinion, Plaintiff argues that the ALJ's rationale is inadequate because the ALJ did not identify "[w]hich limitations were unsupported[.]" *Plaintiff's Brief*, ECF No. 5, p. 16. However, as detailed above, the ALJ expressly found that Ms. Gadson's limitations were expressed only in general terms, citing to that provider's opinion. R. 25 (citing Exhibit 14F, R. 805–07); R. 806 (stating that Plaintiff "requires support for activities of daily living"; Plaintiff's reported pain "make[s] it difficult to carry out" such activities "from a physical standpoint"; "her memory, concentration, and sleep are affected"), 807 ("symptoms of her social phobia present barriers to performing work-related activities"; "worry about doing things correctly and disappointing others tends to perpetuate a slower processing time"; "social phobia can result in a panic attack when a deadline is approaching").[15] Moreover, the ALJ correctly noted that Ms. Gadson did not identify specific findings that supported these generalized limitations. R. 806–07; *see also Pipkin v. Kijakazi*, No. CV 22-2-E, 2023 WL 411291, at *1 (W.D. Pa. Jan. 25, 2023) ("'[S]upportability relates to the extent to which a medical source has articulated support for the medical source's own opinion[.]'") (citations omitted). To the extent that this provider relies on Plaintiff's subjective

---

[15] Plaintiff also argues that Ms. Gadson opined that Plaintiff was "unable to travel independently[,]" *Plaintiff's Brief*, ECF No. 5, p. 16, but that limitation does not appear in Ms. Gadson's opinion letter. R. 806–07.

complaints, the ALJ thoroughly explained why the record evidence did not fully support these statements, R. 20−26, a credibility determination that Plaintiff does not challenge.

As to the consistency of that opinion, Plaintiff complains that the ALJ did not identify the conflicts in the record. *Plaintiff's Brief*, ECF No. 5, p. 16. However, a fair reading of the opinion as a whole supports the ALJ's finding that Ms. Gadson's generalized opinions and conclusions, *i.e.*, that Plaintiff "requires support for activities of daily living"; "auditory and visual hallucinations" "prevent [Plaintiff] from leaving the house on her own and being more independent"; "symptoms of her social phobia present barriers to performing work-related activities[,]" were not consistent with the record evidence. Earlier in the decision, the ALJ expressly acknowledged the proper standard under 20 C.F.R. §§ 404.1520c, 416.920c. R. 19. The ALJ went on to detail years of evidence, including, *inter alia*, evidence that, although Plaintiff suffered from several severe mental impairments, her cognition and memory were normal and her medications helped her sleep and concentrate, R. 21; Dr. Coleman's findings that Plaintiff was cooperative and exhibited very adequate social skills, R. 22; Plaintiff's report that she was able to perform daily activities, including dress, bathing, and grooming herself and that she was able to clean, do laundry, and shop, *id.*; her report of socializing with her mother daily and her friends regularly, *id.*; Dr. Gardner'sk finding that Plaintiff was cooperative and could relate adequately, *id.*; Plaintiff's reported talking with friends on the phone, R. 23; Plaintiff's report in July 2021 that, although she struggled to perform her activities of daily living, she had stopped taking her Abilify and had experienced hallucinations as a result, but could still eat and care for herself, *id.*; Plaintiff's hospitalization in September 2021 for suicidal ideation and auditory hallucinations but it was noted that her psychosis was likely substance induced, *id.*; evidence that she had a boyfriend and spent time with him, *id.*; Plaintiff's

September 2022 denial of hallucinations, her normal eye contact, and findings of good attention and concentration, *id.*; no report of hallucinations in October 2022, *id.*; findings in December 2022 of normal eye contact and thought processes, R. 23–24. As this Court has already noted, the ALJ was not required to repeat this evidence when elaborating on the consistency of Ms. Gadson's opinion with other evidence in the record. *Serrano*, 2021 WL 4477137, at *3–4. Based on this record, the Court finds that substantial evidence supports the ALJ's consideration of the consistency of Ms. Gadson's opinion. *See id.*; *Pipkin*, 2023 WL 411291, at *1 ("'[C]onsistency relates to the relationship between a medical source's opinion and other evidence within the record.'") (citations omitted).

Finally, although the ALJ found Ms. Gadson's opinion unpersuasive, this Court has already noted that the RFC included accommodations for, *inter alia*, limitations in the areas of social, attention, and pace. R. 19. Plaintiff does not explain how these limitations in the ALJ's RFC  do not accommodate Ms. Gadson's opined limitations and Plaintiff suggests no other limitations that the ALJ should have included. *Plaintiff's Brief*, ECF No. 5, p. 16.

For these reasons, the Court will not remand this case based on the ALJ's consideration of Ms. Gadson's opinion.

### 4.    Ms. Stark and Ms. Weidner

The ALJ also found the opinions of Ms. Stark and Ms. Weidner, Plaintiff's counselor and therapist, unpersuasive when crafting the RFC:

Likewise, although I have considered the opinion of the claimant's licensed professional counselor, Ms. Stark, I do not find her opinion to be persuasive. Ms. Stark essentially opines that the claimant would be off-task 15% or more of the work day due to her mental limitations (Exhibit 20F). I do not find this to be persuasive as her "check the box" opinion is not supported by the evidence. For example, her opinion precluding the claimant from carrying out short and simple instructions and asking simple questions for more than 15% or more of the work day is extreme in light of the evidence, such as the claimant being able to run her

38

own small business on Etsy. Also, the evidence indicates that the claimant does not have remarkable issues with concentration and memory (Exhibit 29F/9). Additionally, Ms. Stark is not an acceptable medical source. Moreover, the opinion of the claimant's therapist, Ms. Weidner, is not persuasive for these same reasons. Ms. Weidner opines that the claimant will be what is tantamount to being off-task 10-15% of the work day for most tasks involving mental abilities (Exhibit 28F). This "check the box" opinion is not supported by the evidence cited to for Ms. Stark. Again, this opinion by Ms. Weidner is not persuasive just as Ms. Stark's is not persuasive because these opinions precluding the claimant from understanding and remembering short and simple instructions for more than 15% or more of the work day are extreme in light of the evidence. The claimant reported being able to run a small business and the other evidence documents that she does not have remarkable issues with concentration and memory (Exhibit 29F/9). Moreover, Ms. Weidner is not an acceptable medical source.

R. 25. Plaintiff argues that the ALJ erred in discounting opinions from these providers simply because of Plaintiff's activities, particularly her part-time hobby of making crafts to list for sale on Etsy, and that the ALJ did not adequately explain why such activities undermined the limitations in those opinions. *Plaintiff's Brief*, ECF No. 5, pp. 17–18; *Plaintiff's Reply Brief*, ECF No. 10, pp. 5–7. Plaintiff also argues, as she did with the ALJ's consideration of Ms. Gadson's opinion, that the ALJ erred in rejecting these opinions because Ms. Stark and Ms. Weidner were not acceptable medical sources. *Plaintiff's Reply Brief*, ECF No. 10, p. 5. Plaintiff's arguments are not well taken.

Again, the above recitation reflects that the ALJ did not reject the opinions of Ms. Stark and Ms. Weidner simply because they were not acceptable medical sources. R. 25. Although the ALJ did not consider Ms. Stark and Ms. Weidner to be acceptable medical sources, the ALJ nevertheless actually considered the supportability and consistency of their opinions in accordance with the applicable regulations. *Id*.; 20 C.F.R. §§ 404.1520c, 416.920c. Moreover, the ALJ did not err when implicitly finding that Plaintiff's posting of items for online sale required some level of concentration that undermined the extreme limitations in these opinions. *See Celento v. Comm'r Soc. Sec.*, 613 F. App'x 205, 206–07 (3d Cir. 2015) (noting that hobbies

39

such as, *inter alia*, using a computer, "require at least some . . . mental concentration");

*Cunningham v. Comm'r of Soc. Sec.*, 507 F. App'x 111, 118 (3d Cir. 2012) ("[I]t is appropriate

for an ALJ to consider the number and type of activities in which a claimant engages when

assessing his or her residual functional capacity."); *Ascher*, 2024 WL 687801, at *6 (finding that

the claimant's activity of buying and selling items online "clearly involve[s] at least three

steps"); *cf. Lowrey v. Kijakazi*, No. CV 21-176, 2022 WL 2133568, at *1 n.1 (W.D. Pa. June 14,

2022) (granting the Acting Commissioner's motion for summary judgment where "the ALJ

found that Plaintiff is less limited than what Dr. Schiller found considering her activities,"

including, *inter alia*, the claimant's ability to use a computer). Based on the present record, the

Court finds that the ALJ's consideration of the consistency of these opinions permits meaningful

judicial review.

Plaintiff goes on to complain that the ALJ cited only one record, from September 2022,

when minimizing Plaintiff's issues with concentration and memory. *Plaintiff's Brief*, ECF No. 5,

p. 18 (noting the ALJ's reliance, R. 25, on Exhibit 29F/9, R. 1942). However, as this Court has

already explained, and considering the opinion as a whole, *see Podedworny*, 745 F.2d at 221-22,

the ALJ also noted years of record evidence reflecting unremarkable or moderate limitations in

attention, memory, and concentration. R. 20 – 24. Plaintiff points to evidence from November

2022 that she apparently believes serves to undermine the ALJ's finding that Plaintiff had  no

remarkable issues with concentration and memory. *Plaintiff's Brief*, ECF No. 5, pp. 18–19

(citing R. 1934).[16] However, the Court "will uphold the ALJ's decision even if there is contrary

---

[16] To the extent that Plaintiff complains that "no weight was accorded to this single opinion or provider at all[,]" *id.*, that argument is not well taken. The "opinion" to which Plaintiff refers— *i.e.,* that Plaintiff was "hospitalized due to an increase in symptoms, and was subsequently referred to a higher level of care by the hospital[,]" R. 1934—is not actually an opinion, but objective medical evidence. *See* 20 C.F.R. §§ 404.1502(f), 416.902(k), 404.1502(g), 416.902(l),

evidence that would justify the opposite conclusion, as long as the 'substantial evidence' standard is satisfied." *Johnson v. Comm'r of Soc. Sec.*, 497 F. App'x 199, 201 (3d Cir. 2012) (citing *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986)); *see also Chandler*, 667 F.3d at 359 ("Courts are not permitted to reweigh the evidence or impose their own factual determinations [under the substantial evidence standard]."); *Hatton v. Comm'r of Soc. Sec. Admin.*, 131 F. App'x 877, 880 (3d Cir. 2005) ("When 'presented with the not uncommon situation of conflicting medical evidence . . . [t]he trier of fact has the duty to resolve that conflict.'") (quoting *Richardson v. Perales*, 402 U.S. 389, 399 (1971)).

Finally, the Court also notes that the ALJ did not err in discounting as unsupported the "check the box" opinions of Ms. Stark and Ms. Weidner. R. 25, 1264–67, 1930–33; *see also Galette v. Comm'r Soc. Sec.*, 708 F. App'x 88, 91 (3d Cir. 2017) ("As we have explained, forms that 'require[ ] the physician only to check boxes and briefly to fill in blanks . . . are weak evidence at best.'") (quoting *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993)).

In short, for all these reasons, the Court concludes that the ALJ's findings regarding Plaintiff's RFC are consistent with the record evidence and enjoy substantial support in the record, as does his consideration of the opinions of Dr. Coleman, Dr. Gardner, Ms. Gadson, Ms. Stark, and Ms. Weidner.

### C.    Step Five

Plaintiff challenges the ALJ's step five determination, arguing that the Commissioner failed to carry his burden at that stage because that finding "is based on an incomplete residual

---

404.1513(a)(1), (2), 416.913(a)(1), (2). The ALJ was therefore not required to assess the persuasiveness or supportability of evidence under 20 C.F.R. §§ 404.1520c, 416.9020c. *See* 20 C.F.R. § 404.1513(a)(2), 416.913(a)(2).

functional capacity." *Plaintiff's Brief*, ECF No. 5, pp. 20–21. Plaintiff's argument is not well taken.

At step five, the ALJ must decide whether the claimant, considering the claimant's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). Unlike in the first four steps of the sequential evaluation, the Commissioner bears the burden of proof at step five. *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201 (3d Cir. 2019); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 205 (3d Cir. 2008) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 551 (3d Cir. 2005)). "'Advisory testimony from a vocational expert is often sought by the ALJ for that purpose [of determining whether other jobs exist in significant numbers in the national economy that the claimant could perform] . . . and factors to be considered include medical impairments, age, education, work experience and RFC.'" *Id*. at 205–06 (quoting *Rutherford*, 399 F.3d at 551). "Testimony of vocational experts in disability determination proceedings typically includes, and often centers upon, one or more hypothetical questions posed by the ALJ to the vocational expert." *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984). "Usually, the ALJ will ask whether a hypothetical claimant with the same physical and mental impairments as the claimant can perform certain jobs that exist in the national economy." *Zirnsak v. Colvin*, 777 F.3d 607, 614 (3d Cir. 2014) (citing *Podedworny*, 745 F.2d at 218). "While 'the ALJ must accurately convey to the vocational expert all of a claimant's credibly established limitations,' . . . '[w]e do not require an ALJ to submit to the vocational expert every impairment alleged by a claimant.'" *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (quoting *Rutherford*, 399 F.3d at 554). "[T]o accurately portray a claimant's impairments, the ALJ must include all 'credibly established limitations' in the hypothetical. *Zirnsak*, 777 F.3d at 614 (citing *Rutherford*, 399 F.3d at 554).

42

Credibly established limitations are limitations "that are medically supported and otherwise uncontroverted in the record." *Rutherford*, 399 F.3d at 554. "Limitations that are medically supported but are also contradicted by other evidence in the record may or may not be found credible—the ALJ can choose to credit portions of the existing evidence but cannot reject evidence for no reason or for the wrong reason." *Id*. (citations and internal quotation marks omitted). A "vocational expert's testimony concerning a claimant's ability to perform alternative employment may only be considered for purposes of determining disability if the [ALJ's hypothetical] question accurately portrays the claimant's individual physical and mental" limitations. *Podedworny*, 745 F.2d at 218. Stated differently, "[a] hypothetical question must reflect all of a claimant's impairments that are supported by the record; otherwise the question is deficient and the expert's answer to it cannot be considered substantial evidence." *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987).

In the case presently before the Court, the hypothetical question posed by the ALJ to the vocational expert assumed a claimant with Plaintiff's vocational profile and the RFC found by the ALJ. R. 60–61. The vocational expert responded that the jobs of laundry laborer; laborer, stores; and laborer, general could be performed by such an individual. R. 61–62. For the reasons discussed earlier in this decision, this hypothetical sufficiently captured Plaintiff's credibly established limitations and therefore supported the ALJ's determination at step five. *See Rutherford*, 399 F.3d at 554; *Podedworny*, 745 F.2d at 218. To the extent that Plaintiff complains that not all of her alleged impairments were addressed, this criticism boils down to an attack on the RFC determination itself, *see Rutherford*, 399 F.3d at 554 n.8, which this Court has already rejected for the reasons previously discussed.

In short, the Court finds that the Commissioner has carried his burden at step five of the sequential evaluation and concludes that substantial evidence supports the ALJ's determination in this regard.

### D.    ALJ's Alleged Bias

Finally, Plaintiff argues that the ALJ demonstrated bias or disregard for the law because, even though he "is a decent man[,]" he "shows a strong and pervasive bias against Social Security claimants." *Plaintiff's Brief*, ECF No. 5, pp. 21–27; *Plaintiff's Reply Brief*, ECF No. 10, pp. 7–14. In advancing this argument, Plaintiff does not point to any evidence of the ALJ's bias in her case; rather, she compiles statistical evidence of this ALJ's decision from 2020 to the present to show that the ALJ is "an outlier in terms of outcomes in his cases compared to" other ALJs with dismissals higher than the national numbers. *Id*. (citing attached documentation). Plaintiff contends that this evidence of "global bias[]" in deciding his cases violates Plaintiff's due process rights and warrants the remand of this case. *Id*.

Plaintiff's argument is not well taken. "'[D]ue process requires that any hearing afforded [a Social Security disability] claimant be full and fair.'. . . This standard is violated where a claimant is deprived of the opportunity to present evidence to an ALJ in support of his or her claim or where the ALJ exhibits bias or animus against the claimant." *Bordes v. Comm'r of Soc. Sec*., 235 F. App'x 853, 857–58 (3d Cir. 2007) (quoting *Ventura v. Shalala*, 55 F.3d 900, 902 (3d Cir. 1995)) (internal quotation marks omitted). However, the United States Court of Appeals for the Third Circuit has held that a finding of bias by an ALJ cannot be based "merely on repeated adverse rulings[.]" *Kirlew v. Att'y Gen. of U.S*., 267 F. App'x 125, 128 (3d Cir. 2008) (citations omitted); *cf. Liteky v. United States*, 510 U.S. 540, 555–56 (1994) ("[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion."). This Court has

previously rejected claims of ALJ bias based on statistics. *See Shanta B. v. Comm'r of Soc. Sec.*, No. CV 23-4232 (RK), 2024 WL 3534338, at *7 (D.N.J. July 25, 2024) (rejecting claim of bias where the "only assertions of bias against the ALJ stem from his unfavorable decision which Plaintiff challenges on appeal and his overall approval statistics, rather than any specific instances of biased conduct or language against Plaintiff or Plaintiff's counsel"); *James R. v. Kijakazi*, No. CV 22-05030, 2023 WL 6389097, at *4–5 (D.N.J. Sept. 30, 2023) (finding no evidence of bias where the claimant "cites no evidence in the Record indicating that the ALJ was biased against him. Instead, Plaintiff chiefly relies on the ALJ's apparently high general rate of denying social security benefits and the allegation that other judges in the District have criticized the ALJ. Nevertheless, poor statistics in other cases are not sufficient for the Court to find bias"); *Johnson v. Comm'r of Soc. Sec.*, Civ. No. 08-4901, 2009 WL 4666933, at *4 (D.N.J. Dec. 3, 2009), *aff'd*, 398 F. App'x 727 (3d Cir. 2010) ("[A]n ALJ's impartiality should not be judged by result or reputation or by statistics of how that judge has previously ruled.") (citations omitted).

For these reasons, Plaintiff's claim of bias, which points to no evidence of bias in the instant case but instead relies on statistical evidence from a compilation of rulings, must therefore fail. *Id*.

## VI.     CONCLUSION

For all these reasons, the Court **AFFIRMS** the Commissioner's decision.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

Date:  February 9, 2026                                  *s/Norah McCann King*
                                                        NORAH McCANN KING
                                                   UNITED STATES MAGISTRATE JUDGE